EDWARDS WATKINS, APPELLANT, v. PRUDENTIAL INSURANCE COMPANY OF AMERICA, RESPONDENT.—151 S. W. (2d) 462.

Kansas City Court of Appeals. April 7, 1941.

*William C. Michaels* and *Albert L. Reeves, Jr.* for respondent.

*Ralph W. Hyatt, Michaels, Blackmar, Newkirk, Eager & Swanson,* and *Rogers & Penniston* of counsel.

120

*Wm. T. Thompson* for appellant.

SHAIN, P. J.—This is an action on an industrial policy alleged as issued by defendant on the life of Andrew Watkins. The facts shown by the record are to the effect that the insured, for several years prior to the issuance of the policy, had been an invalid suffering from Hodgkin's Disease and other ailments.

The testimony is further to the effect that a Mr. Wilson, a soliciting agent of defendant, made frequent calls to the home of plaintiff

to collect for premiums on other policies, and on several occasions talked with plaintiff on the advisability of taking out insurance on the life of his brother. It is disclosed that plaintiff's said brother had by reason of his ill health been a financial burden on plaintiff.

In conversations prior to the signing of the application of the insured, plaintiff is shown as having informed the said agent of the insured being afflicted with Hodgkin's Disease and other troubles, and had told defendant's agent that he did not think an insurance company would accept his said brother as a risk. According to plaintiff's testimony, the said agent said that his said brother might so recover his health that his company would accept the risk.

Plaintiff's evidence is further to the effect that thereafter his brother's health improved to the extent that he was able to work and that the matter of him taking insurance on his said brother was talked over with the said agent of defendant, and that the plaintiff agreed with said agent that if insurance could be had on his brother's life, that he, the plaintiff, would take care of the payment of premiums on a $1000 policy on said brother's life if the insurance be made payable to plaintiff in event of his brother's death.

Plaintiff's evidence is further to the effect that at said time his brother, the insured, was living in Olathe, Kansas. Further, the testimony is to the effect that defendant's said agent went to Olathe and secured the application for insurance from his said brother.

It appears that the agent failed to secure the proposed $1000 policy but thereafter the said agent delivered to plaintiff and plaintiff paid the premium upon the industrial policy for $500 that is in issue herein. It appears that when the policy was delivered to plaintiff he was not designated directly as beneficiary. However, the policy contained a Facility of Payment Clause and plaintiff testifies that defendant's said agent told him that his interest was duly taken care of in said clause and that he accepted the policy. The date of the application is shown as of November 24, 1936, and the date of the policy as of November 30, 1936. The insured died of Hodgkin's Disease on May 29, 1937.

The plaintiff's petition is in due form alleging performance of all conditions precedent to recovery and asking recovery on policy and for penalty and attorney fees based upon allegation of vexatious delay.

Defendant, after admitting corporate existence and right to write insurance in Missouri, makes answer alleging application as part of contract and goes into detail in alleging the statements in application of the deceased insured to be false and known to be false when made. Further answering, defendant alleges as follows:

"This defendant further states that by reason of the aforesaid false and untrue statements, answers and representations and each of them this defendant was misled, the minds of the parties never met,

and said policy was obtained through fraud and mutual mistake and never became a binding contract upon this defendant, and was and is wholly void for all purposes.''

Defendant also pleads an accord and satisfaction based upon release signed by plaintiff and also pleads by way of general denial.

The plaintiff makes reply as follows:

''Comes now the Plaintiff and for a reply to the answer of the Defendant, Prudential Insurance Company of America, states:

''That the defendant, Prudential Insurance Company of America waived its rights to insist upon the sound health clause in said policy issued to Plaintiff; that Plaintiff informed Wilson, Agent of the Prudential Insurance Company of America, that the said Andrew Watkins, insured, was sick, had been in Bell Memorial Hospital in Kansas City, Missouri, and was suffering from Hodgkin's Disease according to the doctors and that the defendant Prudential Insurance Company of America thereafter issued to Plaintiff the policy sued on in this case.

''For a further reply to the answer of the Defendant, Prudential Insurance Company of America, Plaintiff states that the release which was obtained by the Defendant, Prudential Insurance Company of America from the Plaintiff, was wholly without consideration and void for that reason.

''The Plaintiff further replying to Defendant, Prudential Insurance Company of America's answer, denies each and every allegation therein contained.''

Trial was by jury and at the close of plaintiff's testimony, defendant asked a directed verdict in its behalf. The request was granted and jury instructed to bring in verdict for defendant. The jury brought in verdict for defendant in accordance to the court's direction. A judgment was entered by court in accordance and plaintiff duly appealed.

We will continue to refer to appellant as plaintiff and to respondent as defendant.

The plaintiff presents its case under points as follows:

''I''

''The court erred in sustaining the demurrer to plaintiff's evidence and in directing a verdict for the defendant.

''1.  Because knowledge of the agent is knowledge of the principal.

''2.  Because the plaintiff never knew what was inserted in the application by defendant's agent.

''3.  Because the defendant in its answer did not allege collusion and fraud between plaintiff and its agent.

''II''

''The release obtained by defendant from plaintiff in this case is void because there is no consideration.''

Plaintiff cites authorities in support of its points.

Defendant presents its theory in points as follows:

"A"

"The evidence affirmatively established that there were fraudulent, material misrepresentations in the application and that on the policy date Andrew Watkins was afflicted with the disease which later caused his death. Agent Wilson's knowledge of the condition of health of Andrew Watkins was not imputable to defendant because (1) plaintiff and Andrew Watkins had express notice that Wilson's authority was limited, and (2) both agent Wilson and the applicant, Andrew Watkins, had equal knowledge of the falsity of the representations contained in the application, and, accordingly, there was collusion between them as a matter of law.

"B"

"With the tender and acceptance of the amount, with interest, of the premiums paid upon the policy, plaintiff and defendant effected a valid accord and satisfaction, or, in the alternative, defendant's liquidated liability was paid in full."

"C"

"The policy was payable to the estate of Andrew Watkins, and plaintiff, who is neither the executor nor administrator, has no capacity to maintain this action."

As the defendant urges that there was a full accord and satisfaction which plaintiff challenges on the ground that same is without consideration, we deem it advisable to give to such question our first consideration.

It is shown that after the death of insured and on July 3, 1937, the plaintiff accepted from the defendant the return of all premiums paid by him together with interest thereon and signed a full release of all debts and demands against defendant that he then had or ever had.

Plaintiff's contention that the above release is not supported by any consideration has merit.

The defendant by its answer herein alleges that by reason of fraud perpetrated on it by the insured, "the minds of the parties never met and that said policy was obtained through fraud and mutual mistake and never became a binding contract upon this defendant, and was and is wholly void for all purposes."

There was a case before the Springfield Court of Appeals, Fowler v. Missouri Mutual Assn., 86 S. W. (2d) 946, wherein the exact question as to consideration for a release as is involved herein was before that court. In the opinion in the above case, l. c. 954, it is said:

"The amount named in the face of this policy, to-wit $1,000, became liquidated upon the death of assured, Biles. The defendant paid plaintiff $146.20, the purported consideration for the release. That it would be bound to do, under the law, before it could plead that the policy was void *ab initio*. It therefore parted with no more

than it conceded that it owed to the plaintiff. Therefore, the release itself was not an accord and satisfaction of the balance of the liquidated amount due under the policy. The release in question was without consideration, and therefore cannot stand as a bar to plaintiff's cause of action.''

It is disclosed in the above opinion that in that case as it is in this case, the amount paid by defendant to the plaintiff is the amount of premiums paid by plaintiff to the insurance company.

This court concludes that the law as laid down by the Springfield Court of Appeals, *supra,* has direct application herein, and holds that the release in evidence herein is not supported by any valid consideration and is not a bar to plaintiff's cause of action.

On the merits the plaintiff presents its case upon its allegation of fraud upon the part of insured. The allegations of fraud are based upon the representations as to condition of health that are made in the application of deceased insured.

The application shown as signed by the insured was placed in evidence and appears as an exhibit in the record. According to the answers in the application, the insured would be a splendid risk. Negative answers appear as to all matters that would make the applicant even a doubtful risk.

The answers in the application are not only shown by the evidence to be false but are admitted to be false and the insured's death is shown to be due and is admitted to be due to an ailment that insured knew he had when the application was signed by him. Plaintiff's agent, Wilson, and the deceased insured are the only persons revealed as present at the time the application was signed. The signature of agent Wilson duly appears as attesting the application, and the application on its face bears evidence to the effect that the answers to all questions were written in there by said agent of defendant. In fact there appears to be no serious contention about the above showing.

With the above facts in mind, we proceed to the consideration of plaintiff's contention that defendant was not in a position to urge fraud and collusion by reason of the fact that no allegation of fraud and collusion was plead between agent and insured.

Defendant's position on this issue is presented in its brief as follows: ''(1) Plaintiff and Andrew Watkins had express notice that Wilson's authority was limited and (2) both agent Wilson and applicant had equal knowledge of the falsity of the representations contained in the application and, accordingly, there was collusion between them as a matter of law.''

We have carefully read the answer of defendant and nowhere find any allegation charging any collusion between the said agent and the said insured. The defendant's answer clearly and expressly alleges fraud only as to the insured and nothing in defendant's answer attempts to charge any fraud on the part of its agent Wilson and

there is nothing in said answer from which it can be concluded that defendant was resting its defense upon any charge of collusion.

In pleading fraud, the facts which constitute the fraud must be pleaded. [Lindberg v. Equitable Fire and Marine Ins. Co., 285 S. W. 741.]

Where fraud is interposed as a defense the facts constituting the fraud should be pleaded.

The rule as expressed in Thompson & Co. v. Special Road District, 323 Mo. 1. c. 693, is as follows:

"While no express form of words is necessary to set out the various elements constituting fraud, it must be made to appear by the facts alleged, independent of mere conclusions, that if the allegations are true a fraud has been committed. [27 C. J., p. 31.]"

In Templeton v. Standard Life Ins. Co., 140 S. W. (2d) 729, this court in its opinion used language expressive of the situation herein involved. However, the above case was determined upon grounds of failure of evidence to show collusion even if same had been plead. The language referred to above is as follows:

"In the first place, the answer contains no allegation of a fraudulent collusion between the insured and the defendant's agent. Defendant's answer does not charge its agent with fraud or collusion with the insured. It charges only the insured with fraud in the concealment of a material fact. But even if this issue had been raised by the pleadings, the record is barren of any evidence in support of collusion between the insured and defendant's agent."

We conclude that the failure to plead fraud and collusion as between insured and agent resolves the point, herein being considered, as against defendant. However, we do not pass upon the question as to whether the evidence would raise an issue of fact if fraud and collusion had been plead.

The evidence in this case is all to the effect that defendant's agent was fully informed as to the physical defects from which insured was afflicted at the time the application for insurance was signed. The general rule followed in this State is to the effect, that the knowledge of the agent acting within the scope of his authority is the knowledge of the company.

The law that we conclude is applicable to the case at bar was expressed in an opinion by the St. Louis Court of Appeals in Longo v. John Hancock Mut. Life Ins. Co., 142 S. W. (2d) 874.

"It is well settled that where the insurer or its duly authorized agent or representative, acting within the scope of his authority, and absent fraud or collusion between him and the applicant, had knowledge of the true state of the applicant's health at the time the contract was entered into, the policy will not be voided, even though the application may have contained false statements with respect to matters which ultimately caused or contributed to the death of the

insured. [Hodges v. American National Insurance Co. (Mo. App.), 6 S. W. (2d); Woodson v. John Hancock Mutual Life Insurance Co. (Mo. App.), 84 S. W. (2d) 390; McGee v. Capital Mutual Ass'n of Jefferson City (Mo. App.), 116 S. W. (2d) 204.]

"This for the reason that the knowledge of the agent, acting within the scope of his authority, is no less the knowledge of the company, so that where the agent himself fills out the application, the company may not, after the risk has attached, contend that it issued the policy in reliance upon the fact that the applicant had made the representations contained in the application, when it was at all times to be charged with knowledge to the contrary. [Sappington v. Central Mutual Insurance Ass'n, 229 Mo. App. 222, 77 S. W. (2d) 140; Yancey v. Central Mutual Insurance Ass'n (Mo. App.), 77 S. W. (2d) 149.]"

As the case will probably be retried, we note as to defendant's point C that there is a Facility of Payment Clause in the policy that must be considered.

Having sustained points one and two of the appealing plaintiff's brief, there is but one course for us to follow.

Judgment reversed and cause remanded. All concur.