Mr. James L. Wilson, Director Department of Natural Resources 12th Floor, Jefferson State Office Building Jefferson City, Missouri 65101
Dear Mr. Wilson:
This opinion is in response to your request concerning whether real property in Crawford County known as "Dillard Mill" is exempt from state and local taxes.
Dillard Mill consists of three parcels of property containing approximately 130 acres. The property is owned by the L-A-D Foundation, Inc. (hereinafter referred to as L-A-D), and is operated as an historical site by the Department of Natural Resources under a land use lease agreement dated December 1, 1975. The lease terms generally provide that the Department of Natural Resources will manage the property for public use for educational, historic, scientific, recreational, and aesthetic purposes. The basic rent is one dollar ($1.00) per year. One term provides that the Department of Natural Resources will pay additional rent to L-A-D sufficient to reimburse L-A-D for any taxes levied on the property.
We understand your concern to be whether or not the property is tax exempt regardless of the lease with the Department of Natural Resources. The lease is significant only because of the additional rent provision which would require the Department of Natural Resources to expend funds if the property is considered nonexempt.
Exemption from taxes depends on Article X, § 6, Missouri Constitution, and Chapter 137, RSMo. Paraclete Manor of Kansas Cityv. State Tax Commission, 447 S.W.2d 311, 313 (Mo. 1969). Section137.110(5) states:
 "The following subjects are exempt from taxation for state, county or local purposes:
* * *
 (5) All property, real and personal, actually and regularly used exclusively for religious worship, for schools and colleges, or for purposes purely charitable and not held for private or corporate profit, except that the exemption herein granted does not include real property not actually used or occupied for the purpose of the organization but held or used as investment even though the income or rentals received therefrom is used wholly for religious, educational or charitable purposes;"
A charitable use tax exemption depends upon the purposes of the organization and the use made of the property involved. Each claim rests upon the particular facts of that case. Paraclete Manor ofKansas City, supra; Frisco Employes' Hospital Association v. StateTax Commission of Missouri, 381 S.W.2d 772, 774 (Mo. 1964).
The first element to consider is the purpose of the organization. L-A-D is a not-for-profit corporation incorporated in Missouri in 1962. Its purposes, contained in Section 5 of the Articles of Incorporation, are stated as follows:
 "The purposes for which the corporation is organized are charitable and scientific, and not for private profit or gain. For these purposes, it may hold, use, and expend such moneys, properties, and assets (including, but not limited to, real estate in Missouri or elsewhere) and reasonably accumulate them and any income thereon to be so used and expended in the future, for the relief of want, need, and distress, and the advancement, promotion, and encouragement of education, letters and science, both experimental and speculative. It may expend or use assets to study, preserve, provide, maintain, promote, and otherwise with relation to, forests and other natural resources, natural and recreational areas. It may expend funds for any of its purposes directly, or indirectly by giving them to others exclusively for any one or more of its purposes. It shall not, however, expend or use any of its funds or assets in or for propaganda or to influence legislation or any election to any public office."
Section 6 provides:
 "In the event of dissolution of the corporation, all assets and property remaining after all liabilities and obligations of the corporation have been paid, satisfied, and discharged, or adequate provision made therefor, shall be distributed to such nonprofit organizations organized and operated exclusively for similar exempt purposes or having exemption from Federal income tax under Section 501(c)(3) of the 1954 Internal Revenue Code or a corresponding provision of prior or subsequent law, or to the Federal Government, state or local government, for a public purpose, as the then Board of Directors may determine."
L-A-D presently owns the following tracts of property in Missouri:
 The Narrows, 258 acres, Texas County Clifty Natural Bridge, 230 acres, Maries County Dripping Springs, 8.59 acres, Texas County Hickory Creek Canyon, 420 acres, Ste. Genevieve County Horseshoe Bend, 222 acres, Texas County Grand Gulf, 150 acres, Oregon County Cave Springs, 172.55 acres, Shannon County Pioneer Natural Area, 20 acres, Shannon County Rocky Petroglyph Tract, 192 acres, Monroe County Dillard Mill, 130 acres, Crawford County Current and Jacks Fork River Frontage, 961 acres, Shannon and Carter Counties
Counsel for L-A-D has informed us that all property, with two exceptions, was donated to L-A-D by Leo A. Drey. The Rocky Petroglyph Tract was purchased directly by L-A-D with funds donated by Mr. Drey. Dillard Mill was purchased directly by L-A-D.
In addition to the land use lease agreement with the Department of Natural Resources for Dillard Mill, L-A-D has entered into similar land use agreements with the Conservation Commission for the following tracts: Clifty Natural Bridge, The Narrows, Rocky Petroglyph, Dripping Springs, Horseshoe Bend, and Hickory Creek Canyon.
In addition, L-A-D is presently negotiating with the National Park Service for acceptance of ownership of Grand Gulf and classification of it as a National Monument. It is also contemplating an outright gift of Cave Springs to the National Park Service.
The Pioneer Natural Area is presently supervised by the University of Missouri (School of Forestry, Fisheries, and Wildlife) for scientific research purposes on behalf of the Society of American Foresters.
The remaining property held by L-A-D, along the Current and Jacks Fork Rivers, is held subject to a scenic easement in favor of the federal government for the public benefit and donation of the remaining interest is contemplated in the future.
L-A-D has also expended funds for a State of Missouri Natural Area inventory and for funding of the St. Louis Environmental Media Center in cooperation with Webster College. The purpose of the Center is for production of environmental educational material and services.
Also, the Internal Revenue Service has granted L-A-D tax exempt status for federal income tax purposes, pursuant to Section 501(c)(3) of the Internal Revenue Code.
We are aware that federal income tax exemption is not a persuasive factor for consideration of this question. Defenders'Townhouse, Inc. v. Kansas City, 441 S.W.2d 365, 375 (Mo. 1969). The fact that L-A-D is organized by authority contained in Chapter 355, RSMo (General Not For Profit Corporation Law), and is authorized to operate only for charitable and scientific purposes pursuant to its Articles of Incorporation is also not controlling. Opinion No. 172, Lawson, dated March 17, 1966 (copy enclosed). However, these factors do reflect on the nature and purposes of L-A-D.Matanuska-Susitna Borough v. King's Lake Camp, 439 P.2d 441, 446
(Alaska 1968).
The second factor involves the actual use of the property in question. L-A-D acquired the Dillard Mill property in December, 1974, for the purpose of preserving the historical, educational, scientific, and natural value of the property for public use. The lease agreement entered into with the Department of Natural Resources to manage and preserve the property reflects that intent. Members of your staff have informed us that the property will be operated primarily as an historic site, and facilities for recreation and nature appreciation will also be available. A review of correspondence between L-A-D and the Department of Natural Resources indicates that the Department of Natural Resources intends to contribute minimal improvement to the property. The plan includes construction of three picnic areas (with tables and grills), a parking area for visitors, latrines, and nature trails. Several existing cabins will be removed.
The use of property for recreational and educational purposes comes within the definition of purposes "purely charitable." St.Louis Council, Boy Scouts of America v. Burgess, 240 S.W.2d 684,687 (Mo.Banc 1951); Jewish Community Centers Association v. StateTax Commission, 520 S.W.2d 23 (Mo. 1975); City of St. Louis v. StateTax Commission, 524 S.W.2d 839, 845 (Mo.Banc 1975). Matanuska-SusitnaBorough, supra. Opinion No. 270, Drake, dated May 14, 1968; Opinion No. 28, Fisher, dated December 20, 1935.
The case of St. Louis Council, Boy Scouts of America, supra,
is particularly instructive. It held that property was considered used for charitable purposes when the use involved preserving property in a natural state for the scouting activities by the Boy Scouts. The court observed at page 687:
 "Does the evidence show that the present user of the Beaumont Reservation brings it within the exemption statute? The evidence does not show that the entire acreage is actually occupied at all times, and we do not believe it necessary that it should in order that it be exempt. User to that extent would destroy the very purpose for which it is operated. Nature and wild life study and its use for out-of-doors living and hiking would then of necessity be abandoned. It would have reached a point where it could not be so used — `the point of no return'. The mere fact that as yet it is not used to its full capacity or that it will be further developed as funds are available and more boys come into scouting does not in the least detract from its present actual, regular and exclusive use for purposes purely charitable. . . ."
Such reasoning should be even more persuasive in the present case because the use of the property is not limited to a particular group (Boy Scouts) but is available to the public generally. See: Frisco Employes' Hospital Association, supra.
There is a line of cases that analyzes whether or not the use of the property involves a profit-making activity to an extent which would render the use of the property as not "purely charitable."Missouri Goodwill Industries v. Gruner, 210 S.W.2d 38 (Mo. 1948);Young Men's Christian Ass'n of St. Louis and St. Louis County v.Sestric, 242 S.W.2d 497 (Mo.Banc 1951); Defenders' Townhouse, Inc.,supra at 369; Paraclete Manor of Kansas City, supra.
In the Defenders' Townhouse, Inc., supra, and Paraclete Manorof Kansas City, supra, the denial of exemption by the Missouri Supreme Court was based upon facts that indicated that the not-for-profit corporations were gaining valuable assets by charging rent sufficient to pay the mortgaged indebtedness pertaining to certain real property. As a result of rental contribution, the corporations would eventually own the real property with clear title. The facts pertaining to Dillard Mill, previously described, indicate that rent is nominal and the contemplated improvements to the property by the Department of Natural Resources are minimal. Therefore, the concern for potential "corporate profit" is not present in this case. Neither is the related concept of "personal benefit" present, which the Missouri Supreme Court found persuasive in Stateex rel. Hammer v. MacGurn, 86 S.W. 138 (Mo. 1905). See also: Opinion No. 31, Burlison, dated June 8, 1967 (copy enclosed).
Therefore, it is the opinion of this office that the Dillard Mill property is used for "purposes purely charitable and not held for private or corporate profit" and is exempt from taxation under the laws of Missouri.
Yours very truly,
 JOHN C. DANFORTH Attorney General
Enclosures: Op. No. 172 Lawson, 3-17-66
 Op. No. 31 Burlison, 6-8-67